IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 22, 2013 Session

## JARROD JUSTIN JACOBSEN v. OLGA ALEKSEENKO JACOBSEN

**Appeal from the Chancery Court for Williamson County**
**No. 40239      Timothy L. Easter, Judge**

**No. M2012-01845-COA-R3-CV - Filed April 5, 2013**

Mother appeals the trial court's designation of Father as the primary residential parent of the parties' minor child, the parenting plan, and the division of marital property. The trial court found that the majority of the factors set forth in Tennessee Code Annotated § 36-6-106 weighed equally in favor of both parents but designated Father as the primary residential parent primarily because the court awarded Father the marital residence, which provides stability for the child. The trial court, however, did not make any findings concerning a wealth of evidence of physical and emotional abuse by Father, some of which Father admitted, and we have determined that the preponderance of the evidence established that Father was abusive of Mother, sometimes in the child's presence. Because Tennessee Code Annotated § 36-6-406(a) mandates that a parent's parenting time shall be limited if the parent is found to have engaged in abuse, we reverse the designation of Father as the primary residential parent, as well as the parenting plan adopted by the court, and remand with instructions to designate Mother as the primary residential parent and establish a new parenting plan considering all applicable factors. As for the division of the marital estate, the trial court awarded Father 68% of the marital estate and Mother 32%, which Mother contends is inequitable. She asserts the inequitable distribution is due to Father being awarded the marital residence, which was unencumbered and valued at $216,000, with Mother receiving $55,000, being 26% of the equity, as her share of the marital residence. Considering the length of the marriage, that each spouse contributed substantially to satisfying the mortgage on the residence, and the relatively equal earning capacities of the parties, *inter alia*, we have determined it is inequitable to award Father 74% of the equity in the marital residence, the result of which awards him 68% of the marital estate. Therefore, we remand with instructions to modify the award by ordering Father to pay Mother $97,200, instead of $55,000, for her interest in the marital residence. As for attorney's fees, we find no error in the trial court's denial of Father's request for his attorney's fees at trial and we deny each party's request for attorneys' fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed and Modified in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Donald N. Capparella, Nashville, Tennessee, and Amy J. Farrar, Murfreesboro, Tennessee, for the appellant, Olga Alekseenko Jacobsen.

Lauren M. Spitz, and Demeka Kay Church, Franklin, Tennessee, for the appellee, Jarrod Justin Jacobsen.

## OPINION

Olga Jacobsen ("Mother") and Jarrod Jacobsen ("Father") married on January 22, 2003, and they have one minor child from the marriage, who was born in March of 2008.[1] Mother, who was born in the Ukraine, is a United States citizen and has a bachelor's degree and master's degree in environmental engineering. She has worked full-time for the Tennessee Department of Environment and Conservation as an environmental engineer since August of 2006, earning $44,000 a year. At the time of the parties' marriage, Father was employed as a software developer for a company where he had been employed for seventeen years, making $78,000 a year; however, Father was laid off in 2009 and has been unemployed since that time.

On September 29, 2011, Father filed a complaint for divorce on various grounds including irreconcilable differences. Mother filed an Answer and Counter-Complaint for Absolute Divorce on various grounds including irreconcilable differences. Father filed an Answer.

On December 5, 2011, Mother filed a motion to compel Father to seek employment and contribute to the monthly marital expenses contending he had been willfully unemployed for two and one-half years, since April 2009. By order entered on December 29, 2011, the court required Father to pay one-half of the expenses of the marital residence and his own automobile insurance.

Both parties resided in the marital residence during the pendency of the divorce and pursuant to an Agreed Order entered on May 29, 2012, they maintained a weekly schedule,

---

[1] Father has sole custody of his daughter from his previous marriage, who was fifteen years old at the time of the divorce.

which provided that Father cared for the child while Mother was at work and that the parties alternated weekends with the minor child from Friday at 4:00 p.m. until Sunday at 4:00 p.m. The Agreed Order also provided that Father would take the minor child to his mother's house for his weekends and that he would vacate the marital residence during Mother's weekends with their child.

The case went to trial on June 21, 2012. Four witnesses testified: Mother, Father, the parties' neighbor, and the paternal grandmother. Mother testified to numerous incidents of abuse by Father. In one incident, Mother testified that Father slammed a shower door so hard the glass shattered and cut her legs. Father admitted to breaking the shower door, but claimed it was an accident. Father admitted to another incident in which he punched a hole in the wall in front of the minor child, broke a kitchen chair in anger, broke a wedding picture in anger, and threw a kitchen faucet at Mother in front of the minor child. The parties' neighbor testified to an angry outburst by Father towards her, that left her feeling unsafe around Father. Father's own mother admitted that Father had angry outbursts but characterized them as "blowing off steam."

The parties stipulated to the divorce, and in its Final Order of Divorce entered on August 16, 2012, the court declared the parties divorced pursuant to Tennessee Code Annotated § 36-4-120(b). The court also found that the marital residence, which Father owned when the parties married and was substantially encumbered at that time with equity of only $12,000, was transmuted marital property because Mother used her credit and her income to satisfy the mortgage on the residence, in addition to contributing to the maintenance of the residence during the marriage. With the exception of the marital residence, the trial court adopted Mother's proposed division of marital assets. As for the residence, the court valued the residence at $216,000 and awarded the unencumbered residence to Father and ordered Father to pay Mother $55,000 for her share of the marital residence. The division of the marital estate resulted in Father receiving 68% of the marital estate and Mother receiving 32% of the marital estate. As for alimony, the trial court found that neither party was entitled to alimony and each party should pay their own attorneys' fees.

With reference to the parenting plan, the trial court found that the majority of the factors under Tennessee Code Annotated § 36-6-106 weighed in favor of both parties equally, but found that because the court awarded Father the marital residence, this factor weighed in favor of Father so the child could have stability. The trial court also found that Father was the primary residential parent since he was unemployed and Mother worked from 6:15 a.m. until 2:45 p.m. during the week. The trial court did not make any credibility findings and it did not address the evidence presented by the witnesses concerning Father's physical and emotional abuse of Mother. Based upon the above findings, the trial court designated Father as the primary residential parent of the minor child, awarded Mother

parenting time every other weekend and every Wednesday overnight for a total of 132 days a year, with Father receiving 233 days a year. The trial court ordered joint decision-making regarding the minor child. The trial court adopted Father's proposed child support calculation, with an income of zero for Father, but found that Father should be employed and gave him eighteen months to obtain employment. The trial court also ordered Father to place the child in a public preschool program as soon as practicable, with the latest being eighteen months. Although the trial court did not address the evidence presented regarding Father's physical and emotional abuse, the trial court ordered Father to complete an anger management course within six months. This appeal by Mother followed.

## ANALYSIS

Mother challenges the designation of Father as the primary residential parent, the parenting plan, the division of marital property, and denial of her request for attorney's fees. Father also raises issues relating to attorney's fees. We shall address each issue in turn.

### I. DESIGNATION OF PRIMARY RESIDENTIAL PARENT

Mother contends the trial court erred in designating Father as the primary residential parent of the parties' minor child and in failing to limit his parenting time pursuant to Tennessee Code Annotated § 36-6-406.

"[N]either trial nor appellate judges have any responsibility greater than to attempt to correctly adjudicate child custody disputes." *Burden v. Burden*, 250 S.W.3d 899, 904 (Tenn. Ct. App. 2007) (quoting *Deitmen v. Deitmen*, No. 86-30-II, 1986 WL 6057, at *1 (Tenn. Ct. App. May 29, 1986)). "Trial courts have broad discretion in devising permanent parenting plans and designating the primary residential parent." *Burton v. Burton*, No. E2007-02904-COA-R3-CV, 2009 WL 302301, at *2 (Tenn. Ct. App. Feb. 9, 2009) (citing *Parker*, 986 S.W.2d at 563). "In reaching such decisions the courts should consider the unique circumstances of each case." *Id.* (citing *Parker*, 986 S.W.2d at 563); *see also Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). This court reviews decisions in divorce cases de novo with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Nelson*, 66 S.W.3d at 901 (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)).

"There are currently two different statutes setting out non-exclusive lists of factors for the trial court to apply to help it reach the goal of determining a child's best interest." *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *6 (Tenn.

Ct. App. Oct. 24, 2012). Tennessee Code Annotated § 36-6-106, which applies to custody determinations, and Tennessee Code Annotated § 36-6-404, which governs the establishment of permanent parenting plans. *See Burden*, 250 S.W.3d at 908; *see also Thompson*, 2012 WL 5266319, at *6. Parenting plans are required to be incorporated into "any final decree or decree of modification in an action for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child." Tenn. Code Ann. § 36-6-404. In determining the residential schedule, the court is to consider a list of factors set forth in Tennessee Code Annotated § 36-6-404(b). The list of factors contained in Tennessee Code Annotated § § 36-6-106 and 36-6-404 are "substantially similar" and both permit the court to allow for consideration of any other factors that the court deems relevant. *Thompson*, 2012 WL 5266319, at *6. Thus, in most cases, the analysis and result would be the same regardless of which set of factors is applied. *Id*.

In this case, the trial court considered the factors set forth in Tennessee Code Annotated § 36-6-106 in making its decision. The trial court found that the majority of the factors set forth in § 36-6-106 weighed equally in favor of both parties. However, the trial court found that its award of the marital residence to Father weighed in favor of him since it went to the factor of stability of the family unit of the caregivers set forth in Tennessee Code Annotated § 36-6-106(a)(4). The court further found that due to Mother's work schedule, Father had been the primary caretaker, which weighed in favor of Father.

Mother argues that the trial court's decision should be reversed because the trial court failed to consider the evidence of abuse in the record, including admitted incidents by Father, in designating Father as the primary residential parent and adopting a parenting plan giving Father significantly more parenting time than Mother. Mother further argues that the trial court failed to follow the statutory mandate contained in Tennessee Code Annotated § 36-6-406, which provides that:

(a) The permanent parenting plan and the mechanism for approval of the permanent parenting plan shall not utilize dispute resolution, and a parent's residential time as provided in the permanent parenting plan or temporary parenting plan shall be limited if it is determined by the court, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:

(1) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting responsibilities; or

(2) Physical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601.

We note at the outset that Father contends Mother waived this issue as she agreed to a pendente lite parenting schedule giving the parties equal parenting time during the pendency of the divorce. We find no merit to Father's argument as Tennessee Code Annotated § 36-6-406(e) clearly states that "[i]n entering a permanent parenting plan, the trial court shall not draw any presumptions from the provisions of the temporary parenting plan." *See also Burden*, 250 S.W.3d at 908 (stating that considering the temporary parenting plan "as is" is an error of law as the "status quo" should not be a factor in the decision of the parenting plan).

Father also cites to *O'Rourke v. O'Rourke*, No. M2007-01833-COA-R3-CV, 2010 WL 4629035 (Tenn. Ct. Ap. Nov. 10, 2010), in support of his argument that Mother waived this issue. In *O'Rourke*, this court held that the trial court did not err in declining to apply Tennessee Code Annotated § 36-6-406 to limit a father's parenting time, in part finding that the mother had waived the issue. *Id*. By the time our opinion in *O'Rourke* was issued, the litigation between the parties had been ongoing for over ten years, the mother had hired and discharged eleven different attorneys of record, there were already two appellate opinions resulting from her appeals to our court, four separate appeals were consolidated for the purpose of the appeal resulting in that opinion, and the record was voluminous. *See id*. at *2. The parties' divorce was granted in April 2001. *Id*. at 15. The parties had nine children, five of which were minors as of the time of the divorce. *Id*. at *1. The father was named the primary residential parent of the oldest minor child and the mother was named primary residential parent of the four youngest minor children. *Id*. at *1. In 2006, the father petitioned for custody of the three minor children alleging the mother was exhibiting bizarre behavior and was attempting to alienate the children from him. *Id*. at *6. The trial court designated the father as the primary residential parent and the mother appealed. *Id*. at *12. On appeal, the mother challenged the designation of the father as the primary residential parent based upon Tennessee Code Annotated § 36-6-406. *Id*. at *14. This court found that the mother waived the issue of the application of Tennessee Code Annotated § 36-6-406 because the mother had repeatedly entered into parenting plans *following* the divorce permitting the father to share custody. *Id*. at *15. The court further noted that the mother made no assertion of abuse following the filing of the divorce complaint. *Id*.[2] Thus, we find Father's reliance on *O'Rourke* misplaced. This action is clearly distinguishable as this is an appeal from an initial determination of the primary residential parent in which there was testimony at trial regarding the abusive behavior of Father, and not as in *O'Rourke* an attempt to apply the statute many

---

[2]The father admitted before the trial court that he was abusive to the mother during their marriage.

years past the final divorce decree in a modification of custody. We hold that Mother has not waived the issue of Tennessee Code Annotated § 36-6-406 and shall now address whether the trial court erred in failing to apply the statute and limit Father's parenting time.

In *Burden*, this court reversed the parenting plan adopted by the trial court finding that it was contrary to the weight of the evidence. *Burden*, 250 S.W.3d at 908. The mother alleged that the father abused her and though the evidence was "hotly contested, at least as to the label placed on the behavior," the father admitted to at least one incident of abuse in which he threw green beans at the mother. *Id*. at 906. At the trial, the father neither admitted nor denied several other incidents of abuse including throwing a mustard bottle, throwing their minor child's toys, and pushing a heavy TV box down on the mother. *Id*. The father himself admitted to physically striking the mother in front of the child. *Id*. This court found that the trial court's opinion, *inter alia*, failed to follow the statutory imperative to prioritize the best interests of the child, ignored or denied the relevance of undisputed facts bearing on "several highly relevant factors listed in [Tennessee Code Annotated] §§ 36-6-106(a) (governing custody determinations) and 36-6-404(b) (governing the establishment of permanent parenting plans), and relied upon several irrelevant and or impermissible considerations. *Id*. Most pertinent to the issue at hand, this court found that the trial court failed to consider the statutory imperatives contained in Tennessee Code Annotated § § 36-6-106(a)(8) and 36-6-404(b)(12), which require the court to consider "evidence of physical or emotional abuse to the child, to the other parent or to any other person," and the statutory mandate contained in Tennessee Code Annotated § 36-6-406(a) that a parent's parenting time in the permanent parenting plan shall be limited if a parent is found to have engaged in such abuse. *Id*. at 913. In *Burden*, the trial court did not discuss the issue of abuse in its opinion and this court held that failing to do so was error:

> [I]t is difficult to discern the basis on which the court concludes that the proven instances of abuse do not meet the standard for mandatory § 36-6-406(a) limitation. Nor does it seem, even disregarding § 36-6-406(a), that the court truly weighed this factor against the other §§ 36-6-106(a) and 36-6-404(b) factors in making a determination about the best interest of the child with regard to custody and the parenting plan.

*Id*. at 913-14. This court inferred that the trial court's disregard of the abuse allegations was in part due to it its own general conclusion that the father was "a harmless person" based upon the trial court's observation of the father in the courtroom. *Id*. at 914. This court held that while the trial court was entitled to make credibility determinations based on observation in the courtroom:

[T]he court cannot simply disregard the weight of the evidence of a substantive issue on the basis of nothing more than its own conclusory statements regarding a party's character. Whether or not the court believes [the father] is "totally harmless" and "gentle," it is still required to duly consider the evidence that he committed abuse of the sort that would affect the outcome of the case under §§ 36-6-406(a), 36-6-106(a) and 36-6-404(b).

*Id*. Finding that the trial court's ruling was contrary to the weight of the evidence in *Burden*, this court reversed and remanded with instructions to designate the mother as the primary residential parent. *Id*. at 918.

As recognized in *Burden*, under either Tennessee Code Annotated § 36-6-106 or 36-4-404, the trial court is required to consider evidence of physical or emotional abuse against the other parent in determining the custody and parenting schedule of the minor child. *Burden*, 250 S.W.3d at 913. Abuse is defined as "inflicting, or attempting to inflict, physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, or malicious damage to the personal property of the abused party." Tenn. Code Ann. § 36-3-601(1).

There were many instances that could be characterized as abuse that Father admitted to during his testimony at the trial. Father admitted to an incident in which he threw a kitchen faucet at Mother in front of the child. Father admitted to breaking a kitchen chair in anger, breaking a wedding picture in anger, punching a hole through a wall, and breaking the master bedroom door. There were also incidents of abuse that were disputed. Mother testified to an incident in which they were arguing and Father slammed the shower door while she was showering, causing the glass door to shatter, from which she received cuts. Father admitted breaking the shower door but insisted it was an accident. Mother also testified to an incident where she and Father were arguing while he was holding the child, Mother reached for the child and Father pushed her causing her to fall. Sarah Burlison, the parties' neighbor testified to an incident in which she was over at the parties' house with Mother during the pendency of the divorce. Mother was upset because Father and the child were not at home, she did not know where they were, and Father was not answering any phone calls. When Father and the child arrived home, and Father discovered Mrs. Burlison was at the house, he began to "rage" and yell at her. Mrs. Burlison was scared to leave Mother and the child at home with Father due to his behavior, and called her husband to help. The police were called as a result of this incident. After this, Mrs. Burlison stated that she avoided Father and began locking her doors at night; she testified that previously, she had felt safe enough for her doors to be unlocked in their neighborhood at night. The paternal grandmother characterized Father's outbursts as "blowing off steam."

The foregoing evidence notwithstanding, the trial court addressed none of these incidents and made no findings of fact regarding the testimony that Father abused Mother or Father's admissions of certain incidents of abuse and designated Father as the primary residential parent. The court adopted Father's parenting plan awarding Father 233 days of parenting time and Mother 132 days of parenting time.

We also find significant that, after designating Father as the primary residential parent, the trial court ordered Father to attend and complete an anger management course, but like before, there are no findings on the issue of abuse. Further, we are unable to reconcile the decision to designate Father as the primary residential parent without addressing the plethora of evidence of abuse as *Burden* mandates with the decision ordering Father to attend and complete an anger management course.

Having reviewed the evidence in detail, and realizing that Father was ordered to undergo an anger management course, we have determined that the evidence of abuse must be considered in conjunction with Tennessee Code Annotated § § 36-6-106(8) and 36-6-406. Because it was not addressed at trial and there are no findings of fact on the issue, we conducted a de novo review and concluded that the evidence concerning Father's abuse weighs heavily in favor of Mother being designated as the primary residential parent.

Looking to the other statutory factors set forth in Tennessee Code Annotated § 36-6-106, we find, as the trial court did, that some factors weigh equally in favor of both parties. Both have a good relationship with the child demonstrating love and affection between them as set forth in Tennessee Code Annotated § 36-6-106(a)(1) and both parties are able to perform the proper parenting responsibilities as considered in § 36-6-106(a)(10); however, the evidence preponderates against the trial court's finding that § 36-6-106(a)(2), which considers the "disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver," weighs in favor of Father. Although Father cared for the child during the workdays from the time the child awoke, Mother arrived home around 3:30 in time for the child to awake from his nap, and then she cared for the child for the remainder of the day. Further, Mother scheduled the child's doctor's appointments, provided health insurance for the child, and established an education fund for the child. While Father took the child to various activities, it was Mother who signed the child up for those activities. Mother purchased a pass to the zoo for the family and was the one who organized play dates for the child. Father was somewhat reclusive and did not interact with neighbors, schedule play dates, or interact with other parents at the child's soccer games. There was also evidence that Father exposed the child to violent video games, movies, and music with questionable lyrics resulting in an order that the child not be exposed to such.

For the foregoing reasons, we reverse the designation of Father as the primary residential parent and remand with instructions to designate Mother as the primary residential parent. Further, on remand, in light of the evidence concerning Father's abuse, the trial court should consider Tennessee Code Annotated § 36-6-406 and all relevant factors in adopting the appropriate parenting plan and setting Father's parenting time. Thus, we remand to the trial court for further proceedings consistent with the foregoing ruling, including *inter alia* setting Father's child support obligation and a reconsideration of insurance requirements.

## II. DIVISION OF MARITAL PROPERTY

The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Tennessee is a "dual property" state, thus, property cannot be included in the marital estate unless it is deemed "marital property." *Smith v. Smith*, 93 S.W.3d 871, 875-76 (Tenn. Ct. App. 2002). The definition of "marital property" is found in Tennessee Code Annotated § 36-4-121(b)(1)(A). "Separate property," as that term is defined in Tennessee Code Annotated § 36-4-121(b)(2)(A)-(F), is not marital property. Therefore, separate property should not be included in the marital estate. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Property classification is a question of fact. *Bilyeau v. Bilyeau*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). Thus, we review the trial court's classification using the familiar standard of review in Tennessee Rule of Appellate Procedure 13(d).

Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *See Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). Decisions regarding the value of marital property are questions of fact; thus, they are not second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Kinard*, 986 S.W.2d at 231.

Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). "Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c)." *Kinard*, 986 S.W.2d at 230. "Trial courts have wide latitude in fashioning an equitable division of marital property." *Id*. Therefore, this court

accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tennessee Code Annotated § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

Although the parties presented differing values for the trial court's division of the marital property, the values contained in Mother's proposed division of marital property are those adopted by the trial court. Thus, these values will serve as the basis for our analysis unless the evidence preponderates against those values. *See Kinard*, 986 S.W.2d at 231.

With the exception of the marital residence, the trial court adopted Mother's proposed division of marital property. The court awarded the following personal property to Mother: the funds in two bank accounts amounting to $785 and $6,293 each; her 401k valued at $5,292.14; her 2011 Toyota Camry valued at $9,850; and household goods amounting to $1,970. The court awarded the following personal property to Father: his Mercury Cougar valued at $2,600 and household furnishings valued at $5,050.

The marital residence, which had equity of only $12,000 at the time of the marriage due to a mortgage, was unencumbered at the time of the divorce and the trial court valued the residence at $216,000.[3] The court awarded the unencumbered residence to Father and ordered Father to pay Mother $55,000 for her equitable share of the residence.

Including the personal property and real property, the value of the marital assets awarded to Mother is $79,190.14 and the value awarded to Father is $168,650.[4] As a result, Father received approximately 68% of the marital estate and Mother received 32% of the marital estate. Mother contends this is an inequitable division of the marital property.

---

[3]At trial, Father contended the marital residence was separate property. At the time of the marriage, Father's equity in the home was only $12,000. During the marriage, the parties paid off the mortgage with Mother contributing $28,000 towards the mortgage pay-off in addition to $500 for a new roof, $251 for a new water heater, and $3,400 for a new heating and air system. The trial court found the residence was marital property and neither party raises this as an issue on appeal.

[4]In Father's Rule 7 Table, he states the trial court allotted $14,927.26 in marital debt to him in the division of marital property; however, there is no mention of such a debt in the trial court's order and the alleged debt is not mentioned in Mother's proposed division of marital property, which was adopted by the trial court and attached to its order. Further, in Father's testimony and his proposed division of marital assets, he attributed this debt to the "costs of litigation." Thus, this debt shall not be considered.

In its final order, the trial court stated it considered the factors set forth in Tennessee Code Annotated § 36-4-121, however, the court did not articulate which factors weighed in favor of the parties or make any findings of fact to support its decision to award 68% of the marital property to Father and 32% to Mother.

Father cites cases that affirm divisions of marital property that divided the property 60% to one spouse and 40% to the other, however, we find the cases distinguishable. In *Malone v. Malone*, No. E2010-01455-COA-R3-CV, 2011 WL 3066384, at *4 (Tenn. Ct. App. July 26, 2011), the wife received only 40 percent of the marital property; however, she left the marriage with an additional $883,436.17 of her own separate property. In *Larsen-Ball v. Ball*, the Supreme Court affirmed the division of marital property with 60% of marital property to the husband and 40% to the wife despite the wife's contention that the division was inequitable to her. *Ball*, 301 S.W.3d 228, 231 (Tenn. 2010). *Ball* is distinguishable due to the fact the husband earned a $17 million dollar fee after the complaint for divorce was filed, there were allegations that each spouse dissipated marital assets, both parties spent money on a "grand scale," and they enjoyed an extravagant lifestyle. *Id.* at 236.

After considering the record before us in its entirety, we have concluded the division of the marital estate is inconsistent with the relevant factors in Tennessee Code Annotated § 36-4-121(c), which are:

(1) The duration of the marriage
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisition of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight as if each party has fulfilled its role;
. . .
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;

-12-

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
. . . ; and
(11) Such other factors as are necessary to consider the equities between the parties.

The parties were married for nine years and both are in good physical health. Mother has a bachelor's and master's degree in environmental engineering and works full-time as an environmental engineer for the State of Tennessee earning approximately $44,000 a year. While Father has only a high school education, he was employed with the same company for seventeen years ultimately earning as much as $70,000 a year, and has significant experience in software design. Father introduced e-mails at trial showing that following his lay-off from his job as a software designer he was contacted for various IT positions, one with a starting salary of $80,000. The trial court itself found that Father was capable of finding employment and ordered him to do so within eighteen months of the entry of the Divorce Decree. Thus, the parties have similar earning capacities and both parties contributed their incomes and separate assets to the marriage. When the parties were first married, Mother initially was unable to work as she did not yet have a visa and Mother stayed home to care for Father's daughter from his previous marriage. Mother started working in 2006 and both parties worked full-time until 2009, when Father was laid off. Thereafter, Father stayed home and cared for the parties' minor child during the day, while Mother was the primary wage earner. Neither party came into the marriage with significant marital property or leaves the marriage with any significant separate property. Further, Father had only $12,000 of equity in the residence when the parties married and each spouse contributed substantially to paying off the entire mortgage.

The foregoing factors notwithstanding, Father was awarded 62% of the marital estate, which was primarily due to Father being awarded the unencumbered $216,000 marital residence, while Mother received only 25% of the value of the residence, which amounted to $55,000. Including the personal property, Mother was awarded $79,190.14 of the marital property, while Father was awarded more than twice that amount, $168,650.

Considering all of the above, we have concluded that the division of the marital estate is inequitable; therefore, we modify the division of the marital estate and remand with instructions to award Mother $97,200, which is 45% of the value of the marital residence, for her share of the marital residence, in addition to the personal property previously awarded to Mother. With this modification, Mother shall receive marital assets totaling $121,390 and Father shall receive marital assets totaling $126,450.

Accordingly, on remand the trial court shall enter judgment in favor of Mother against Father in the amount of Ninety-Seven Thousand Two Hundred ($97,200) Dollars, for her share of the marital residence. Interest shall accrue on said judgment from July 31, 2012, the date the final decree of divorce was entered. Further, being consistent with the trial court's order, Father will have ninety (90) days from the issuance of mandate by this court to pay the $97,200 judgment, with interest, to Mother. All other provisions of the division of the marital estate, to the extent they are not inconsistent with this opinion, are affirmed.

## III. ATTORNEY'S FEES

Father asserts that the trial court erred in denying his reasonable attorney's fees below. An award of attorney's fees in a divorce case constitutes alimony in solido. Tenn. Code Ann. § 36-5-121(h)(1). The decision whether to award attorney's fees is within the sound discretion of the trial court. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011). The trial court denied each party's request for attorney's fees finding that under the circumstances of this case neither party was the economically disadvantaged spouse and that each party should be responsible for their own attorneys' fees. We find no error with this determination and thus affirm.

Both parties request their attorneys' fees on appeal. The decision of whether to award a party their reasonable attorney's fees on appeal is within our sole discretion. *Harris v. Harris*, 83 S.W.3d 137, 141 (Tenn. Ct. App. 2001) (citing Tenn. Code Ann. § 36-5-103(c)). As the trial court found, neither party emerges from this marriage more economically advantaged than the other and we hold that each party should be responsible for their own attorney's fees on appeal.

## IN CONCLUSION

The judgment of the trial court is affirmed in part, reversed and modified in part, and this matter is remanded for further proceedings in accordance with this opinion. Costs of appeal are assessed against each party equally.

_____
FRANK G. CLEMENT, JR., JUDGE